## A02A2336. BRANKOVIC v. SNYDER et al.
(578 SE2d 203)

JOHNSON, Presiding Judge.

We granted Milana Brankovic's application for interlocutory appeal in this medical malpractice case. There is only one issue before us: whether the trial court abused its discretion in permitting the defendants, who failed to respond to Brankovic's request for admissions of fact and other discovery requests, to withdraw the admissions. We hold that the trial court did not abuse its discretion, and so affirm its judgment.

Generally, with requests for admissions, a matter is admitted unless the party to whom the requests are directed serves a written answer or objection addressed to the matter.[1] Any matter admitted

---

[6] *Melby v. State*, 70 Wis.2d 368, 378 (234 NW2d 634) (1975).
[1] OCGA § 9-11-36 (a) (2).

under OCGA § 9-11-36 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission.[2]

OCGA § 9-11-36 (b) provides that, subject to OCGA § 9-11-16, the court may permit withdrawal or amendment when: (1) the presentation of the merits of the action will be subserved by the withdrawal or amendment; and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.[3] Both prongs must be established.[4]

The party moving to withdraw the admission has the burden of satisfying the first prong.[5] To satisfy that prong, the movant is required to show two things: that the admitted request either is incredible on its face or can be refuted by admissible evidence having a modicum of credibility, and that the denial is not offered solely for purposes of delay.[6] The trial court's ruling on this issue may be reversed only upon a showing of abuse of discretion.[7]

The following facts are undisputed: In April 1999, Brankovic was critically injured in a car accident and was rushed, unconscious, to Kennestone Hospital for emergency treatment. She was diagnosed as having a transected aorta and then transferred to St. Joseph's Hospital by ambulance for surgery to repair the aorta and to address her other internal injuries. Dr. Averel Snyder performed cardiac thoracic surgery to repair the aorta, while Kenneth Norris, a physician's assistant, was present. After the surgery, it was discovered that Brankovic was paralyzed.

According to Brankovic, her aorta was not transected and the cardiac thoracic surgery was not necessary or could have been safely delayed. Brankovic also claims that the surgery was improperly performed in that medical personnel failed to take appropriate measures to protect her spinal cord during the prolonged cross-clamp of her aorta. Brankovic alleges that the unnecessary, negligently performed surgery rendered her a paraplegic.

In April 2001, Brankovic filed a medical malpractice action against numerous defendants, including Snyder, Norris, Peachtree Cardiovascular & Thoracic Surgeons, P.A., and John Chandler, PA-C (collectively "the doctors"). Brankovic attached discovery requests to the complaints, though there is a dispute as to whether she actually

---

[2] *Rocor Intl. v. Guyton*, 229 Ga. App. 758, 760 (1) (494 SE2d 571) (1997) (physical precedent only).

[3] OCGA § 9-11-36 (b); *Rocor Intl.*, supra.

[4] *Marlowe v. Lott*, 212 Ga. App. 679, 681 (2) (442 SE2d 487) (1994).

[5] *Howell v. Styles*, 221 Ga. App. 781, 783 (2) (472 SE2d 548) (1996).

[6] Id.

[7] *Saleem v. Snow*, 217 Ga. App. 883, 887 (2) (460 SE2d 104) (1995) (physical precedent only); *Rowland v. Tsay*, 213 Ga. App. 679-680 (1) (445 SE2d 822) (1994).

attached all of the discovery requests to all of the complaints. The request for admissions tracked the allegations of the complaint and included admissions that the doctors failed to provide the appropriate standard of care in treating Brankovic.

The doctors were served in April and filed answers in May 2001. In essence, they denied having breached the standard of care. Chandler denied ever having treated Brankovic. The doctors filed a demand for a jury trial and a motion to dismiss and corresponded with Brankovic over the ensuing months, but none of the doctors filed responses to any of the discovery requests.

In August 2001, Brankovic moved to strike the doctors' answers for their failure to respond to her discovery requests.[8] In support of her motion to strike, Brankovic attached her counsel's affidavit stating that the requests for admissions and other discovery were attached to the summons and complaint served on each defendant in April. She also attached the affidavits of specially appointed process servers indicating that each doctor was served with all of the discovery documents when they were served with the summonses and complaints. Brankovic showed that the process servers' affidavits were filed in April and mailed to the doctors in June.

In response to Brankovic's motion to strike, the doctors moved to extend the time to respond to the discovery requests. In their motion, they argued that Snyder and Peachtree Cardiovascular were not served with any of the discovery requests and Chandler was not served with the request for admissions; only Norris was served with all discovery requests. The doctors noted that Brankovic did not contact them regarding overdue discovery until she filed the motion to strike in August 2001, and that the civil docket did not show that any discovery was served upon the doctors or filed with the court. They added that they did not wilfully, consciously, or intentionally disregard the discovery requests. Along with their motion to extend the time to respond to the discovery requests, the doctors submitted proposed responses to the discovery requests.

Brankovic countered, among other things, that the doctors' admissions could not be withdrawn because the doctors failed to satisfy the first part of the two-prong test set forth in *Intersouth Properties v. Contractor Exchange*;[9] that prong requires the party moving to withdraw admissions to show that the presentation of the merits will be promoted by the granting of the request.[10] In other words, the moving party must show that the admissions are incredible or could

---

[8] See OCGA § 9-11-37 (b) (2), (d).
[9] 199 Ga. App. 726 (405 SE2d 764) (1991).
[10] Id. at 727-728 (1).

be refuted by credible admissible evidence, and that the denials were not offered solely for the purpose of delay.[11]

At the hearing, the doctors argued that contrary to the facts deemed admitted, Snyder and Norris complied with the applicable standard of care, that Chandler was not involved in Brankovic's care, and that the doctors were not employees of St. Joseph's. They added that their position is supported by the doctors' affidavits and Snyder's deposition. The doctors further argued that this was not a case in which there were phone requests and repeated demands for responses to the discovery. Indeed, they urged that as soon as they realized that Brankovic served them with the requests, they attempted to file responses. Finally, they argued that Brankovic failed to show she would be prejudiced by withdrawal of the admissions.

The trial court stated that the failure of the doctors to respond to the discovery requests was not "egregious," such as where a party ignores a court order to respond. The court remarked that "paper was going back and forth," and that Brankovic's counsel could have simply telephoned the doctors' counsel and asked for the discovery responses. The court added that the case needed to be tried on the merits, and that it did not want to "get caught up on technicalities."

Brankovic responded that the doctors did not meet the first prong of the *Intersouth Properties*[12] test. The trial court then asked the doctors' counsel to "try to meet [that test] so you can give them what they need." Counsel replied that he would give Brankovic "[e]verything she mentioned today." The trial court told the doctors' counsel to "[g]ive them what they need," and told Brankovic she could redepose the doctors if necessary. The trial court denied Brankovic's motion to strike the doctors' answers, granted the doctors' motion to extend the time within which to respond to Brankovic's discovery requests, and accepted as timely the responses the doctors filed in conjunction with their response to Brankovic's motion. In its written order, the trial court did not specify its basis for the ruling.

Considering the record before us, we cannot say the trial court abused its discretion by allowing the doctors to withdraw the admissions and submit responses to the discovery requests. The requests for admissions largely duplicate the allegations of Brankovic's complaint and include requests to admit allegations of liability which the doctors denied in their answers. In their motion to withdraw the admissions, the doctors presented responses to the requests for

---

[11] Id.; *F.P.I. Atlanta v. Price*, 211 Ga. App. 634, 635 (1) (440 SE2d 63) (1994).
[12] Supra.

admissions, as well as affidavits to show that their responses were meritorious and not interposed solely for the purposes of delay. Thus, the merits of the case are promoted by the withdrawal of the admissions.[13]

With respect to the second part of the test, there has been no showing that permitting the withdrawal will prejudice Brankovic. Merely being forced to go to trial is not such a prejudice as will prevent the withdrawal of admissions.[14]

Granted, the trial court did not explicitly explain its ruling in terms of the two-prong test, but the court did not expressly show that it was not considering those essential factors. The two-prong test was extensively argued to the court by both parties, and, in the absence of a contrary showing, the trial court will be presumed to have followed the law.[15]

We point out that the purpose of requests for admissions is to expedite trial and clarify the issues in a case, not gain tactical advantage over an opponent.[16] A party has "no right to a judgment based on *false* 'admissions' effected merely because [the doctors were] late in answering the requests for admissions, for such false admissions do not subserve the merits."[17] The record supports a finding that the merits would be subserved by allowing withdrawal, and that Brankovic would not be prejudiced by the withdrawal. The trial court did not abuse its discretion by permitting the doctors to withdraw the admissions and file responses to the discovery requests.[18]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 11, 2003 — ▮▮▮▮▮▮▮▮▮

*Elizabeth Pelypenko*, for appellant.
*Hall, Booth, Smith & Slover, John E. Hall, Jr., Beth W. Kanik, Insley & Race, Brynda R. Insley*, for appellees.

---

[13] See *Rowland*, supra.
[14] See id.
[15] See generally *Bailey v. Hall*, 199 Ga. App. 602, 605-606 (2) (405 SE2d 579) (1991).
[16] *Saleem*, supra.
[17] (Citation and punctuation omitted.) *Rowland*, supra at 681 (1).
[18] See *Saleem*, supra; *Rowland*, supra at 680.